IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TIMBUK K. ATAKORA,

           Plaintiff,

    v.

ROBERT FRANKLIN and
MOREHOUSE COLLEGE,

          Defendants.

1:12-cv-2595-WSD

## OPINION AND ORDER

This matter is before the Court on Defendants Robert Franklin ("Franklin")

and Morehouse College ("Morehouse") (collectively, "Defendants")'s Motion for

Summary Judgment [39].

**I.     BACKGROUND**

On October 17, 2011, Timbuk Kofi Atakora ("Plaintiff" or "Atakora"), a

student at Morehouse College, was standing on a temporary stage at the Forbes

Arena at Morehouse College in Atlanta, Georgia, taking video and photographs of

a fashion show and hip-hop concert presented as part of the college's homecoming

activities.  Atakora had been hired as a student videographer by the Homecoming

Committee.  At some point, Atakora fell from the stage and was knocked

unconscious.  He was bleeding from a head injury and was taken by ambulance to Atlanta Medical Center, where his head was stapled and it was determined that he had suffered a concussion and a brain contusion.  Atakora was also referred to an orthopedic doctor to address knee pain.

The last thing Atakora remembers prior to falling is pressing the stop button on his video camera.  The next thing he remembers is waking up in an ambulance. Atakora does not remember falling from the stage, nor does he know how he fell. Other students later told him that a hole had opened in the floor of the stage.

Atakora alleges that, although he had student health insurance, Morehouse failed to provide the hospital with his insurance information.  As a result, Atakora alleges, he was treated as an uninsured patient and given sub-standard medical care in unsanitary conditions.  Atakora further alleges that Morehouse failed to contact his mother to notify her that Atakora had been injured and hospitalized.

Atakora continued as a student at Morehouse until February 2012, when he received notice that he was to be evicted from his dorm room because of an outstanding tuition balance.  Shortly thereafter, Atakora was dropped from his classes and locked out of his dorm room.  His academic transcript was withheld. Plaintiff returned to his home in Silver Spring, Maryland, leaving his personal belongings in the dorm room he was no longer permitted to enter.  Plaintiff alleges

2

that he was in contact with Morehouse officials and had arranged to return to Morehouse in March to collect his things.  However, during Atakora's absence, Morehouse staff removed Atakora's belongings and disposed of them.  Atakora further alleges that Morehouse agreed to release his transcript and waive his remaining tuition balance if he agreed to sign a waiver releasing Morehouse from liability for Atakora's injuries.

On July 12, 2012, Atakora, proceeding *pro se*, filed this action in the United States District Court for the District of Maryland.  Finding Plaintiff's Complaint failed to allege a factual nexus to Maryland, on July 26, 2012, the court in Maryland transferred the action to the Northern District of Georgia.

Atakora asserts claims against Morehouse and Franklin, the president of the college, for: (1) negligently failing to ensure the stage was erected in a safe manner; (2) failing to provide the hospital with his student insurance information; (3) neglecting to contact his mother to inform her of his injuries and hospitalization; (4) neglecting to ensure that his medical needs were attended to after his release from the hospital; (5) expelling him from Morehouse after an assessment of his need for continued neurological and orthopedic care; (6) trashing his personal effects in his dorm room; (7) refusing to release his academic transcript unless he signed a release of liability; and (8) denying him the ability to

3

register for classes.

On May 15, 2013, Defendants moved for summary judgment.  Defendants argue that Atakora's personal injury claims are barred by Georgia's workers' compensation exclusive remedy rule and that Defendants are not liable under Georgia premises liability law because Defendants did not construct the stage and had no legal duty to inspect or maintain it.  Defendants also argue that Atakora failed to present evidence of a defect in the stage or evidence that Defendants were aware of the defect and, further, that Atakora's own negligence bars his recovery.  Defendants finally argue that Atakora's remaining claims are not cognizable causes of action under Georgia law.

## II.   DISCUSSION

A.   <u>Legal Standard</u>

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Parties "asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

4

materials." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). Non-moving parties "need not present evidence in a form necessary for admission at trial; however, [they] may not merely rest on [their] pleadings." Id. "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant, but only "'*to the extent supportable by the record*.'" Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007) (emphasis in original)). "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog,

193 F.3d at 1246.  But, this requirement "extends only to 'genuine' disputes over material facts," meaning "more than 'some metaphysical doubt as to the material facts.'" <u>Garczynski</u>, 573 F.3d at 1165 (quoting <u>Scott</u>, 550 U.S. at 380).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" and summary judgment for the moving party is proper.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

B.    <u>Analysis</u>

1.    *Exclusive Remedy of Workers' Compensation*

Defendants argue that Atakora's claims are barred by the workers' compensation exclusivity rule because, under Georgia law, an employee's sole remedy for damages resulting from an injury during the course of employment is compensation under the Workers' Compensation Act, O.C.G.A. § 34-9-1, <u>et seq.</u> That Act provides:  "The rights and remedies granted to an employee by this chapter shall exclude all other rights and remedies of such employee . . . at common law or otherwise, on account of injury, loss of service, or death . . . ." O.C.G.A. § 34-9-11(a).  Defendants argue that Atakora was working for Morehouse at the time of his injury and that the injury occurred in the course of Atakora's employment and, thus, the exclusive remedy for his injury is a claim for

6

workers' compensation.

Defendants do not, however, provide any evidence that Atakora is an employee covered by the terms of the Workers' Compensation Act.  The Act defines an "employee" as:

> Every person in the service of another under a contract for hire or apprenticeship, written or implied, except a person whose employment is not in the usual course of the trade, business, occupation, or profession of the employer; . . . A person shall be an independent contractor and not an employee if such person has a written contract as an independent contractor and if such person buys a product and resells it, receiving no other compensation, or provides an agricultural service *or such person otherwise qualifies as an independent contractor.*

O.C.G.A. § 34-9-1(2) (emphasis added).  Where there is a relationship of independent contractor and contractee, no coverage is afforded under the workers' compensation law.  Id.  The test of whether or not a person is an independent contractor is whether the person employed to perform the work was to be free, under the contract, from the control of the employer as to the manner in which the employee performed the details of the work.  Davison-Paxon Co. v. Ferguson, 94 Ga. App. 501, 95 S.E.2d 306 (1956).

Defendants here claim that it is undisputed that Atakora was "employed by Morehouse College to take video and photographs of homecoming activities at the time he fell from the concert stage."  (Defs.' Statement of Undisputed Material

7

Facts ("SUMF") ¶ 1.)  The basis for this assertion is Atakora's deposition testimony, in which he acknowledges that "there was no question in [his] mind" that he "was working for Morehouse and the Homecoming Committee . . . on October 17th."  (Atakora Dep. at 114:15-19.)  That Atakora believed that he was "working" for Morehouse at the time of his injury does not demonstrate that he constituted an "employee" of Morehouse for the purposes of the Workers' Compensation Act.  That legal determination turns on the nature of the contractual relationship, if indeed there was one, between Atakora and Morehouse.[1]  If Atakora was an independent contractor, he would not be eligible for workers' compensation.  O.C.G.A. § 34-9-1(2).

Defendants do not provide any evidence on the key issue of the nature of Atakora's contractual relationship with Morehouse or the Homecoming Committee.  There is no evidence in the record to support that Atakora's was as an employee, rather than as an independent contractor, nor is there record evidence or testimony regarding the control, if any, that Morehouse or the Homecoming Committee exercised over Atakora in the performance of his duties in taking video

---

[1] The Court notes that the record indicates a factual dispute regarding whether Atakora was considered to be "working" for Morehouse at all.  In an email to Atakora's mother, Robyn Crittenden, Morehouse's general counsel, stated that Atakora "was not working for the College at the time" of his injury.  (Pff.'s Resp. to Defs.' Mot. for Summ. J., Ex. L.)

and photographs of homecoming activities.  Accordingly, the Court cannot conclude, on the limited record before it, that Atakora is limited to a workers' compensation claim.  Defendants' motion for summary judgment on that basis is required to be denied.

2.    *Defendants' Duty to Inspect and Maintain the Stage*

Defendants next argue that they are entitled to summary judgment because Atakora did not put forth any evidence that they had a legal duty to inspect of repair the concert stage from which Atakora fell.  Defendants submitted an affidavit from Kevin Brooker, Associate Dean for Student Life at Morehouse. Booker states that Morehouse contracted with Atlanta Audio Visual to provide a concert stage for the 2011 homecoming activities.  Brooker states that Atlanta Audio Visual had the sole responsibility for "selecting, constructing and disassembling" the stage from which Atakora fell, and that Defendants "did not undertake to control the means or methods by which Atlanta Audio Visual constructed or maintained the concert stage."  (Brooker Aff. ¶ 11.)    Brooker further states that "[i]t was sole responsibility of Atlanta Audio Visual, and not Defendants, to inspect the stage to ensure that it did not pose a hazard to others and make safe the stage in the event it did pose a hazard to others."  (Id. ¶ 13.)  Brooker states further that "Defendants did not conduct any inspections on October 17,

2011 because Atlanta Audio Visual had the sole responsibility to inspect the concert stage," and "Morehouse College relinquished possession and control of its premises temporarily to Atlanta Audio Visual to the extent necessary for Atlanta Audio Visual to construct, maintain and disassemble the concert stage." (Id. ¶¶ 14, 15.)

Atakora did not present any evidence to rebut Defendants' claim that Defendants did not construct the stage and did not assume any duties with respect to the stage. Atakora argues that Morehouse officials were taking tickets at the entrance to the concert, that Morehouse staff and employees were working at the concert, and that Morehouse maintained its own "stage crew" on site. Atakora does not dispute, however, that Atlanta Audio Visual was contractually responsible for constructing, inspecting, and maintaining the concert stage.

Because there is no evidence that Defendants were responsible for contructing, inspecting, or maintaining the concert stage from which Atakora fell, Atakora's negligence claim against Defendants fails. See Thompson v. Phelps Indus., Inc., 215 Ga. App. 128 (1994). In Thompson, the plaintiff had driven his truck into a hydraulic truck dump and, upon exiting the vehicle, had fallen through a gap between the platform of the truck dump and the surrounding catwalk. The Georgia appeals court affirmed a grant of summary judgment to the defendant

contractor that had built a hydraulic truck dump because there was no evidence that the defendant also constructed the catwalk.  The plaintiff in <u>Thompson</u> failed to offer any rebuttal evidence to support his theory that the defendant had any participation in the design and construction of the catwalk.

Here, Atakora also fails to rebut Defendant's evidence that they were not responsible for the construction or maintenance of the concert stage[2] and, accordingly, the Court necessarily finds that Defendants did not have a legal duty to prevent the hazard that Atakora alleges caused his injuries.  Defendants' motion for summary judgment on Atakora's premises liability claim is required to be granted.[3]

Having found that the record evidence does not support that Defendants had a legal duty to maintain and inspect the stage from which Atakora fell, the Court need not consider Defendants' arguments that Atakora failed to present evidence of

_____

[2] Atakora argues, in his response brief, that Defendants failed to comply with Atlanta building codes and fire codes that applied to the concert stage.  There is no evidence in the record to support these arguments.

[3] In addition, under Georgia law, a premises owner is not responsible for torts committed by an independent contractor unless the owner retains the right to direct or control the contractor's work or if the owner assumes control such that the contractor becomes an employee.  O.C.G.A. §§ 51-2-4, 51-2-5.  <u>See also</u> <u>Kraft General Foods v. Maxwell</u>, 219 Ga. App. 211 (1995).  Here, the unrebutted evidence is that Defendants did not undertake to control the means or methods by which Atlanta Audio Visual constructed or maintained the concert stage.

a defect of which Defendants were aware, or that Atakora's own negligence bars his recovery.

3.   *Plaintiff's Remaining Claims*

Defendants argue that Georgia law does not provide a cause of action for Atakora's remaining claims.  Specifically, Defendants argue that they were not responsible for calling Atakora's mother and that, in any event, she was notified of her son's injury by her daughter within hours of the accident.  Defendants also argue they were not responsible for ensuring that Atakora's student insurance information was provided to the hospital.  Defendants further argue that Atakora received medical care at Atlanta Medical Center and that there is no evidence that Defendants' constructively denied Atakora any medical treatment.  Finally, Defendants argue that because Atakora was behind on his tuition payments, Defendants were within their legal rights to drop him from his classes, evict him from his dorm, and dispose of his possessions.

Atakora does not directly respond to Defendants' argument that they did not breach any legal duties owed to Atakora.  Instead, Atakora argues that Defendants' actions are inconsistent with the standards Morehouse College claims to represent. Atakora submitted various brochures and marketing materials, as well as screenshots from Morehouse's website, which Atakora claims demonstrates that

12

Morehouse holds itself out to the world as a safe "home for black men" where students will be "part of a community" and "taken care of."  Atakora alleges that Morehouse failed to live up to its moral duties when it "witness[ed] one of its students being severely injured, taken off campus unconscious by an ambulance" and failed to "assume responsibility for ensuring that their parent or guardian is notified and that a representative from the school ensures that the hospital is provided with the students [sic] identification and insurance information."  (Pff.'s Resp. at 9.)  Atakora further argues that it was wrong for Morehouse to insist upon a waiver of liability before agreeing to take care of his medical needs.  (Id.)  These arguments, however morally persuasive, do not provide a basis upon which Atakora may assert a cause of action against Defendants.

Atakora claims that Defendants did not follow their standard procedures for evicting a student, and further claims that Defendants breached an agreement to permit Atakora to return to Morehouse in March 2012 in order to collect his personal belongings.  Atakora also argues that he had an ongoing arrangement with Morehouse to handle his tuition bills that consisted of partial payments and grants and that it was only after his injury that Morehouse refused to work with him to continue to address alternative means for satisfying his bills.  To the extent Atakora seeks to assert claims for breach of contract, these claims are not asserted

in the Complaint, which does not make any attempt to describe the contracts alleged to have been breached.  The Court thus does not consider the breach of contract claims, if any, Atakora untimely asserts in his response to Defendants' summary judgment motion.

The Court finds that Atakora has failed to state legal claims against Defendants for failing to notify his mother of his hospitalization, dropping him from his classes, evicting him from his dorm, or disposing of his personal possessions.  The Court also finds that Atakora failed to present any evidence that Defendants constructively denied Plaintiff medical care.  Defendants are entitled to summary judgment on each of Atakora's claims.[4]

## III.    CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants Robert Franklin and Morehouse College's Motion for Summary Judgment [39] is **GRANTED**.

---

[4] Because there are no independent claims remaining, Defendants are also entitled to summary judgment on Plaintiff's claim for punitive damages.

**SO ORDERED** this 13th day of December 2013.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE